IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **MARK KELLNER,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **CARDA HEALTH, INC.,** a Delaware registered corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Mark Kellner ("Plaintiff Kellner" or "Kellner") brings this Class Action Complaint and Demand for Jury Trial against Defendant Carda Health, Inc. d/b/a Carda Health ("Defendant" or "Carda Health") to stop Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing telemarketing calls to consumers without consent including pre-recorded calls and calls to phone numbers that are registered on the National Do Not Call registry ("DNC"), including after being told to stop calling. Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kellner, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

1

## PARTIES

1.    Plaintiff Kellner is a resident of Clearwater, Florida.

2.    Defendant Carda Health is a Delaware registered corporation headquartered in Dover, Delaware. Defendant Carda Health conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.    This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5.    As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in

Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.    According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in December 2025 alone, at a rate of 132.6 million per day. www.robocallindex.com (last visited January 28, 2026).

10.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.     Carda Health provides for pay medical services.

14.     Carda Health places calls to consumers to generate business.

15.     Carda Health places calls using pre-recorded messages, as per Plaintiff's experience.

16.     Carda Health places calls to consumers who registered their phone number on the DNC.

17.     In addition to the above, Carda Health continues to place unsolicited calls to consumers despite being told to stop calling.

18.     Consumers have posted complaints online about unsolicited calls they received from Carda Health, including:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

4



19.     A consumer posted a complaint on YouMail.com on August 7, 2025 detailing an experience that matches what Plaintiff Kellner experienced, complaining about receiving calls despite exiting the Carda Health website without completing the sign-up:



---

[3] https://directory.youmail.com/phone/866-932-5104
[4] Id

20.    In response to these calls, Plaintiff Kellner brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF KELLNER'S ALLEGATIONS

21.    Plaintiff Kellner is the sole owner and user of his cell phone number ending in 1649.

22.    Plaintiff Kellner registered his cell phone number on the DNC on April 8, 2005.

23.    Plaintiff Kellner uses his cell phone number for personal use only as one would use a landline telephone number in a home.

24.    Plaintiff Kellner uses his cell phone primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household purposes.

25.    Plaintiff Kellner's cell phone plan is paid for by Plaintiff himself.

26.    Plaintiff Kellner is retired.

27.    Plaintiff Kellner has never had his cell phone number associated with a business.

28.    In approximately the first quarter of 2025, Plaintiff Kellner visited Cardahealth.com to inquire about pricing for Chronic Obstructive Pulmonary Disease health services.

29.    Plaintiff clicked on "Get Started" from the main website to try and get

a quote:



30.    Plaintiff provided his name and phone number on the website:



31.    The website did not provide any visible consent language regarding the

use of Plaintiff's cell phone number.

---

5 https://www.cardahealth.com/
6 https://join.cardahealth.com/patient/signup/questionnaire/phone-number

32.    The footer of the website showed the following, which does not include any website terms, or consent language:



33.    After providing his phone number, Plaintiff Kellner expected details about a quote for the cost of Carda Health's services, but the website continued to ask questions about Plaintiff's health, which he did not provide.

34.    Plaintiff Kellner exited from the website after concluding that he would need to provide extensive personal health information before receiving a simple price quote. Plaintiff exited without providing consent to receive pre-recorded calls, without consenting to any terms of service, privacy policy, or consent terms, and without completing the signup process.

---

[7] https://join.cardahealth.com/patient/signup/intro?utm_source=main_site

35.     The Carda Health website does mention terms and consent terms in the sign-up process, but only after a series of questions have been asked through the website:



36.     Plaintiff Kellner did not see or agree to the terms shown above.

37.     Plaintiff Kellner began receiving calls to his cell phone from Carda Health.

38.     The calls were not answered, but pre-recorded voicemails were left identifying the company name Carda Health.

39.     The voicemails were solicitations that instructed Plaintiff Kellner to call 866-932-5104 to discuss a health plan that would match Plaintiff's needs.

40.     Plaintiff Kellner called 866-932-5104 and spoke to different employees.

---

[8] https://join.cardahealth.com/patient/signup/terms

41.    During these calls, Plaintiff Kellner specifically stated that he's not interested and asked for the calls to stop.

42.    Despite his stop requests, the calls continued through 2025 and into 2026.

43.    Plaintiff Kellner blocked 866-932-5104 in his phone, but the calls continued and most resulted in pre-recorded voicemails that Plaintiff had to delete to preserve room on his cell phone voicemail.

44.    On or around January 12, 2026, Plaintiff Kellner called 866-932-5104.

45.    Plaintiff spoke to a live agent and asked again for the calls to stop.

46.    Despite this stop request, the calls continued almost daily.

47.    For example, on January 21, 2026 at 10:12 AM, Plaintiff Kellner received a call to his cell phone from 866-932-5104.

48.    This call was not answered, but a pre-recorded voicemail was left stating:

> "… journey. This is an exciting step and we are here to support you every step of the way. Give us a call back. My number here is 866-932-5104. Or text us a time that works best for you and we will give you a call back. Have a great day."

49.    Plaintiff Kellner could tell that the voicemail is pre-recorded because it begins partway into the message, the voice and intonation are scripted and robotic, and because he received identical voicemails throughout 2025 and January of 2026.

50.    866-932-5104, is the main number for Carda Health:



51.    On January 22, 2026 at 10:04 AM, Plaintiff Kellner received a call to his cell phone from 866-932-5104.

52.    This call was not answered, but a pre-recorded voicemail was left stating:

> "… journey. This is an exciting step and we are here to support you every step of the way. Give us a call back. My number here is 866-932-5104. Or text us a time that works best for you and we will give you a call back. Have a great day."

53.    This voicemail is identical to the voicemail that Plaintiff received on January 21, 2026 as described above.

54.    Plaintiff Kellner received additional unsolicited calls to his cell phone from 866-932-5104 on:

- January 23, 2026 at 10:16 AM;
- January 26, 2026 at 9:40 AM;
- January 27, 2026 at 9:36 AM;
- January 28, 2026 at 9:39 AM; and on
- January 29, 2026 at 10:27 AM.

55.    All of the aforementioned calls were not answered, but each resulted in a pre-recorded voicemail stating:

"… journey. This is an exciting step and we are here to support you every step of the way. Give us a call back. My number here is 866-932-5104. Or text us a time that works best for you and we will give you a call back. Have a great day."

56.    Plaintiff Kellner has never provided his prior express written consent to receive pre-recorded calls from Carda Health.

57.    In addition, Plaintiff Kellner terminated his business relationship with Carda Health upon placing his first stop call request in early 2025.

58.    The calls that Plaintiff Kellner received from Carda Health were placed in violation of the TCPA.

59.    The unauthorized solicitation calls that Plaintiff received from Defendant Carda Health have harmed Plaintiff Kellner in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

60.    Seeking redress for these injuries, Plaintiff Kellner, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

61.    Plaintiff Kellner brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Carda Health called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant or an agent calling on behalf of Defendant called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant or an agent on behalf of Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

62. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Kellner anticipates the need to amend the Classes definition following appropriate discovery.

63.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

64.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c)    Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(d)    Whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(e)    Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

14

65.    **Adequate Representation**: Plaintiff Kellner will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Kellner has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Kellner and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Kellner nor his counsel have any interest adverse to the Classes.

66.    **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Kellner. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's

misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Kellner and the Pre-Recorded No Consent Class)

67.    Plaintiff Kellner repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

68.    The Defendant transmitted unwanted telephone calls to Plaintiff Kellner and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

69.    These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

70.    The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Kellner and the Do Not Call Registry Class)

71.    Plaintiff repeats and realleges paragraph 1-66 of this Complaint and

incorporates them by reference herein.

72.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

73.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

74.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Kellner and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Kellner and the Do Not Call Registry Class received more than one telephone call in a 12-month

period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

76.    As a result of Defendant's conduct as alleged herein, Plaintiff Kellner and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

77.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kellner and the Internal Do Not Call Class)**

78.    Plaintiff repeats and realleges paragraph 1-66 of this Complaint and incorporates them by reference herein.

79.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is

made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

80.    The Defendant or an agent acting on its behalf placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant to initiate telemarketing calls.

81.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

82.    The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Kellner requests a jury trial.

> **MARK KELLNER**, individually and on behalf of all others similarly situated,

DATED this 18th day of February, 2026.

> By: /s/ *Stefan Coleman*
> Stefan Coleman (Fla. Bar No. 30188)

21

COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman (Fla. Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Lead Counsel

*Attorneys for Plaintiff and the putative Classes*